PHŒNIX LAND CO. et al. v. EXALL et al.

(Court of Civil Appeals of Texas. Dallas. June 7, 1913. Rehearing Denied June 28, 1913.)

1. TRIAL (§ 142\*)—TAKING CASE FROM JURY —INFERENCES FROM EVIDENCE.

To authorize the court to take a case from the jury, the evidence must be of such a char-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

acter that there is no room for ordinary minds to differ as to the inferences to be drawn therefrom.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 337; Dec. Dig. § 142.*]

2. PARTITION (§ 70*) — PROCEEDINGS — QUESTION FOR JURY.

Evidence, in an action for an accounting, an adjustment of expenses, and partition, *held* sufficient to go to the jury on the material issues, so that there was no error in refusing to direct a verdict for defendant.

[Ed. Note.—For other cases, see Partition, Cent. Dig. § 193; Dec. Dig. § 70.*]

3. ATTORNEY AND CLIENT (§ 148*)—CONTINGENT FEES—EQUITABLE INTEREST IN LAND —SUBJECT OF LITIGATION.

Under a contract whereby an attorney and his partner were to sue for the recovery of land and to have an interest and part therein to the amount of a reasonable contingent fee of not less than three-fifths of what was recovered, and where the legal title to the land recovered was conveyed to trustees for their clients, the attorneys became the equitable owners of an interest in the land.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 352, 353; Dec. Dig. § 148.*]

4. FRAUDS, STATUTE OF (§ 76*)—INTEREST IN REAL PROPERTY — "CONTRACT FOR SALE OF LAND."

An agreement between two or more persons for the joint acquisition of land is not, within the meaning of the statute of frauds, a "contract for the sale of land," which to be valid must be in writing.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 135–139; Dec. Dig. § 76.*]

5. ATTORNEY AND CLIENT (§ 167*)—INTEREST IN LAND—SUBJECT OF LITIGATION—QUESTION FOR JURY—ABANDONMENT.

On evidence, *held,* that the question whether an attorney had lost his interest in land under a contingent fee contract, by abandonment of the fee contract and by litigation in relation to the land after its acquisition, was for the jury.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 373–375; Dec. Dig. § 167.*]

6. ATTORNEY AND CLIENT (§ 151*)—INTEREST IN LAND—SUBJECT OF LITIGATION—CHARGES.

Where a law partnership was on equal terms, and there was no stipulation in the partnership agreement for compensation to one partner for settling up the partnership business, nor on voluntary dissolution providing for extra compensation to the partner who remained in charge of the firm business, the latter was not entitled to extra compensation for such services, and hence it could not be made a charge against the interest of the retiring partner in the land acquired by the partnership under a contract for a contingent fee.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 312, 313; Dec. Dig. § 151.*]

7. DEEDS (§ 15*) — CONSIDERATION TO SUPPORT.

Where an attorney who recovered land, the legal title to which was conveyed to trustees for his clients, had an equitable interest therein under the terms of a contingent fee contract, conveyed his interest to defendant company in order to perfect the title and to free it from litigation, and the company by written instrument expressly acknowledged that his real interest should not be affected by the conveyance and agreed to reconvey his interest, such conveyance to the company did not divest his interest in the land.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 23; Dec. Dig. § 15.*]

8. ATTORNEY AND CLIENT (§ 147*) — ATTORNEY'S INTEREST IN LAND—CONTRACT — VALIDITY.

Where an attorney, a partner in a law firm, who had acquired an interest in land recovered for his clients under a contract for a contingent fee, did not act as attorney for the company to which the title recovered for his clients had been conveyed, his conveyance to such company in aid of litigation with the express understanding that it should not affect his interest and that it would be reconveyed, was not void as against the rule that an agreement between an attorney and client, after the attorney has been employed, in respect to particular business by which the original contract is so varied as to give him greater compensation than first agreed on, will not be enforced.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 351; Dec. Dig. § 147.*]

9. VENDOR AND PURCHASER (§ 13*)—CONSIDERATION.

Where an attorney, a partner in a law firm, who had acquired an interest in land recovered for his clients, upon a contract for a contingent fee, conveyed it to a company holding the legal title for such clients in order to perfect its title and to aid in the defense of a suit, a contract by the company to reconvey was supported by a sufficient consideration.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 14; Dec. Dig. § 13.*]

10. VENDOR AND PURCHASER (§ 30*)—DURESS.

An attorney, who had acquired an interest in land recovered for his clients under a contract for a contingent fee, refused to convey his interest to a corporation holding the title for the clients, and declared that unless his interest in the land was recognized he would join with plaintiff against the company. *Held,* that there was not such duress as would defeat the contract whereby he did convey to the company on its promise to reconvey.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 34; Dec. Dig. § 30.*]

11. JUDGMENT (§ 675*) — CONCLUSIVENESS — AGAINST PERSON PARTICIPATING IN ACTION.

Where an attorney, who had acquired an interest in land recovered for his clients under a contract for a contingent fee, conveyed his interest to a company holding the legal title for such clients, to enable it to better defend a suit and in consideration of the prospect and probability of procuring a favorable judgment in such suit, his participation in the defense of such suit after his conveyance did not estop him from subsequently asserting his interest in the land, since no such estoppel could arise without proof of wrong on one side and injury suffered or apprehended on the other, or unless the injury was so clearly connected with the wrong that it might and ought to have been foreseen, and since it did not mislead or prejudice any party to the suit.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1190, 1191, 1194; Dec. Dig. § 675.*]

12. CORPORATIONS (§ 410*)—CONTRACTS—REPRESENTATION BY PRESIDENT.

The act of the president of a corporation holding the legal title to land recovered by creditors of such corporation for the benefit of such creditors in proportion to their interest, and who owned practically all of its stock, received

and used its moneys for his own purposes, managed its affairs as his own, and who held proxies from every stockholder, in contracting with an interested party for the conveyance of his interest to the corporation and in promising that the conveyance should not affect his interest and that it should be reconveyed when it could be conveniently done, was the act of the corporation binding upon it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1629–1632; Dec. Dig. § 410.*]

13. CORPORATIONS (§ 388*)—CONTRACTS—ULTRA VIRES.

A corporation, holding the legal title to land for the benefit of the real parties in interest under a contract whereby one of such parties conveyed his interest to it to aid in litigation upon its promise to reconvey, and which received the full benefit of the performance of such contract, could not defeat the right of such party to a reconveyance on the ground that the contract was ultra vires.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1556–1567; Dec. Dig. § 388.*]

14. TRESPASS TO TRY TITLE (§ 35*)—PLEADING—MATTER OF DEFENSE.

Where the petition in trespass to try title based on succession to an attorney's interest in land acquired under a contract with himself and his partner for a conditional fee, without alleging that all the partnership obligations had been discharged, and the equities between the partners adjusted, was sufficient to show a right of recovery, facts, if any, showing the attorney's interest in the land to be less than that claimed, were matters to be pleaded in defense.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 50–52; Dec. Dig. § 35.*]

15. TENANCY IN COMMON (§ 28*)—RIGHT TO ACCOUNTING—OUSTER.

To entitle an ousted cotenant to an accounting for rents it is not necessary that he should have been ousted from the entire property, since he was entitled to the use and occupancy of the entire estate in common irrespective of the proportion of his interest, so that a cotenant ousting him from any part of the property must account for his interest in rents collected by him.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 76–88; Dec. Dig. § 28.*]

16. TENANCY IN COMMON (§ 28*)—RIGHT TO ACCOUNTING—NECESSITY OF DEMAND.

One tenant in common who uses lands need not account to his cotenant until there has been a formal demand by the latter to be admitted to the possession in common and such demand has been denied; but, where a tenant in common has nothing to do but to receive the rents, he is liable to account to his cotenants for their proportion of the rents so received.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 76–88; Dec. Dig. § 28.*]

17. LIMITATION OF ACTIONS (§ 193*) — TRESPASS TO TRY TITLE (§ 35*)—PLEADING AND ISSUES—RENTS AND IMPROVEMENTS.

In trespass to try title, where plaintiff established a cotenancy with defendants, and where defendants denied plaintiff's claim and asserted title in themselves and prayed that title be quieted and pleaded the statute of limitations against the claim for rents, the pleadings and evidence authorized a submission of the issue as to whether plaintiff's right to recover rents collected by defendants was barred by limitations, and as to whether the rents pri-

or to a certain date were an offset to defendants' claims for expenditures.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 704–710; Dec. Dig. § 193;* Trespass to Try Title, Cent. Dig. §§ 50–52; Dec. Dig. § 35.*]

18. TRESPASS TO TRY TITLE (§ 45*)—PROCEEDINGS—INSTRUCTIONS.

In trespass to try title, where plaintiff claimed the interest of a deceased attorney acquired under a contract for a contingent fee, where there was no pretense that in the employment of associated attorneys any written contract was entered into by which they were to share in the land with plaintiff's predecessor, a charge, that if plaintiff recovered he should be charged with one-half of any interest to which such attorneys might have been entitled under their respective contracts, was as favorable to defendant as he was entitled to under the facts.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 67; Dec. Dig. § 45.*]

19. FRAUDS, STATUTE OF (§ 56*)—INTEREST IN LAND—PAROL CONTRACT.

Where the legal title to land was in trustees for parties who had recovered it under a contract by which their attorney was to have an interest therein, any parol contract by such attorney agreeing that associated attorneys should have an interest in the land for their services was in violation of the statute of frauds and nonenforceable.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 83–89, 136–138; Dec. Dig. § 56.*]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Trespass to try title by Mrs. Mary D. Exall and others against the Phœnix Land Company and others, with cross-action to quiet title. Judgment for plaintiffs, and defendants appeal. Affirmed.

W. J. J. Smith and W. J. Moroney, both of Dallas, for appellants. Spence, Knight, Baker & Harris, of Dallas, for appellees.

RAINEY, C. J. Mrs. Mary D. Exall and her husband, Henry Exall, as plaintiffs, instituted this suit in the district court of the Sixty-Eighth judicial district at Dallas, Tex., on October 15, 1910, against Phœnix Land Company, a corporation existing under the laws of Texas, and against W. J. Moroney, as defendants, to recover on behalf of Mrs. Mary D. Exall, as her separate property, a three-tenths undivided interest in certain lands situated in Dallas county, Tex., and also for an accounting with defendants of the rents and revenues and proceeds of sales of portions of said land, received by defendants, and for adjustment of certain expenses claimed to have been paid by the defendants in recovery of the lands in certain previous litigation, including taxes, cost of improvements, attorney's fees, and other charges paid by defendants, and under appropriate allegations plaintiffs sought a partition of the said lands through commissioners to be appointed by the court. The lands described in plaintiffs' pleading comprised four tracts, but before judgment plaintiffs and defendants dis-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes.

claimed as to the first and third tracts, leaving in controversy the second and fourth tracts. The second tract comprises 25 acres of land out of the John Grigsby League and Labor Survey, generally called the "Hughes and Slaughter Tract," and the fourth tract comprises 11.92 acres, a part of the Thomas Lagow League and Labor Survey, commonly called the "Mays Tract." The plaintiff Mrs. Exall sued as the sole residuary devisee and legatee under the will, duly probated, of her deceased brother, Joseph M. Dickson, who died September 11, 1909, and sought to recover her proportion of the rents and revenues of the lands held by defendants prior to her brother's death, and both plaintiffs sought to recover their proportion of the rents and revenues of said lands received by the defendants since said Joseph M. Dickson's death.

The first count of the amended petition, on which the case was tried, is in the ordinary form of trespass to try title. In other counts it is alleged, among many other things, that defendants are in possession of the lands sued for and have so been since April 10. 1905; that said lands are in large part revenue bearing, and that the rents thereof have been during all of said period and are of the reasonable value of $200 per month; that defendants have converted all of said property and lands and the revenues thereof to their own use. Plaintiffs further allege: That certain parties, composing the association known as "J. E. Downes and associates," caused deeds conveying said land to be executed to A. D. Aldridge, A. F. Hardie, and W. G. Mowry as trustees for said Downes and associates, by C. C. Bumpas and others, and the surviving directors of Texas Trunk Railway Company, which deeds contained stipulations in substance as follows: "That said J. E. Downes and associates are creditors of Texas Trunk Railway Company, as variously organized, and their privies and assigns, who are beneficially interested in this conveyance and who are represented by the law firm of Dickson & Moroney, composed of Joseph M. Dickson and W. J. Moroney, of Dallas, Tex., who are authorized to direct said trustees in the management of their said trust and in the sale, conveyance, distribution or partition of the property hereby conveyed, or any part thereof, and in the recovery by suit, or otherwise, of any of said property that may be held adversely or to which any person or persons may assert any adverse claim, or in the compromise of any adverse claim, and said trustees shall not be liable to said beneficiaries for anything they may do under the direction of said firm of Dickson & Moroney, nor are the said trustees authorized to make any conveyances of said property or otherwise affect its title without the consent in writing of the said firm of Dickson & Moroney, but shall make such conveyances without warranty, or such compromise or compromises as said Dickson & Moroney shall in writing direct; it being the purpose, however, of this deed to vest the full legal title to said property in said trustees, who are authorized to act in their own names alone as trustees, subject to the advice and direction of the said firm of Dickson & Moroney, as hereinabove stated; and either member of said firm may act for the firm in any matter or matters concerning or arising out of this conveyance of the property hereby conveyed. In the case of the death, resignation or refusal to act of any of said trustees, the remaining trustee or trustees shall become vested with all the rights, powers and title hereby vested in all of said trustees, and the said Dickson & Moroney shall have the power by instrument of writing to appoint a substitute trustee or trustees to fill the vacancy or vacancies thus created, and such substitute trustee or trustees shall thereupon succeed to all the rights and powers and title of the original trustee or trustees." "Any deed or other instrument in writing executed by said trustees, or any of them, with the written direction and consent of said Dickson & Moroney, shall be prima facie evidence of its validity and of the truth of all of the facts therein recited. This deed is executed by the authority and direction of said J. E. Downes and associates." That said firm of Dickson & Moroney was a firm of attorneys and counselors at law, practicing their profession at Dallas, Tex., composed of said Joseph M. Dickson and the defendant W. J. Moroney; their partnership in the practice of law having been formed in the year, to wit, 1885, and continuing until the —— day of ——, 1899. That said firm was employed by the parties composing the association known as "J. E. Downes and associates," aforesaid, to enforce their claims to the lands herein in controversy, which were then claimed adversely to the members of said association, and the said Downes and associates and the persons composing said association made and executed in writing and verbally contracts and agreements respectively with the firm of Dickson & Moroney, to the effect that Dickson & Moroney should be entitled to have and receive from 10 per cent. to three-fourths, or an average of about three-fifths, of whatever was recovered on behalf of the members of said association as compensation for their services in enforcing the claims of Downes and associates. That it was agreed by all the parties with whom Dickson & Moroney thus contracted that said firm should be interested in the recovery of said lands and have an interest and part therein to the amount of a reasonable contingent fee, which should be at least three-fifths of what might be recovered, and that it was understood that the trustees, Aldridge, Hardie, and Mowry, should be entitled to receive reasonable compensation for their services as trustees, and that all costs and expenses to be entered upon for the enforcement of the rights of Downes and associates should be

paid out of what should be recovered. That said trustees, Aldridge, Hardie, and Mowry, acting for the benefit of the beneficiaries, composing the association of Downes and associates, did, under the direction of said Dickson & Moroney, and pursuant to the fee contracts with said attorneys, bring suit for the land aforesaid and herein involved, and recovered it in that certain suit styled A. D. Aldridge et al. v. E. H. Pardee et al., No. 17,147 on the docket of the district court of Forty-Fourth judicial district of Texas, at Dallas. That by the judgment rendered in said cause plaintiffs recovered only a part of the lands, but, upon appeal to the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas (24 Tex. Civ. App. 254, 60 S. W. 789), the trustees recovered all of the land involved in said suit, and, although further revisory proceedings were sued out and were prosecuted by the defendants to the Supreme Court of the United States (189 U. S. 429, 23 Sup. Ct. 514, 47 L. Ed. 883), the judgment of said Court of Civil Appeals was in all things affirmed, and thereby the trustees, Aldridge, Hardie, and Mowry, recovered the land in controversy therein and herein involved, for the benefit, however, of the real beneficiaries, who were the parties composing the association of J. E. Downes and associates, and also Joseph M. Dickson and W. J. Moroney did thereby become entitled to their respective proportionate interests in said lands pursuant to their respective fee contracts, which interests amount to a three-tenths interest in said lands. That plaintiff Mrs. Exall acquired all of said interest of her deceased brother, Joseph M. Dickson, under the terms of his said will. That, so standing the title of said lands, a suit was instituted by H. M. Spalding as plaintiff against said Aldridge, Hardie, and Mowry and all other beneficiaries in the trust aforesaid, and members of the association of J. E. Downes and associates, including also said Joseph M. Dickson and said W. J. Moroney.

The plaintiff in said suit thereby attempted to recover an interest in the same lands, claiming to have been a creditor of the old Texas Trunk Railway Company as variously organized, and claiming a right to an interest in said lands proportionate to his claim against said railway company. Thereupon Joseph M. Dickson, being then the owner of and entitled to the possession of an undivided three-tenths interest therein, did, at the solicitation of W. J. Moroney, acting for himself and as president of Phœnix Land Company, execute with said company a certain contract in writing, of date April 15, 1905, by which he agreed to transfer his interest in and to said lands by a conveyance to put the record title thereof in said defendant company, the more readily to perfect the title to said property and to free the same from litigation (meaning the Spalding litigation), and such conveyance was

then executed to said Phœnix Land Company by said Dickson, but by said instrument of writing Phœnix Land Company which also executed same, expressly acknowledged that the real interest of said Dickson in said property "shall not be affected by said conveyance," and that, as soon as same can be conveniently done, the said company "will convey to the said Joseph M. Dickson his interest in said lands and in the proceeds of such parts as may have been sold," and then said company further agreed in said instrument that it would not sell any of its lands situated within five miles of the county courthouse of Dallas county, Tex., without the written consent of said Dickson, and that he should be entitled to the reconveyance of his interest in said lands 60 days after the termination of the said Spalding suit, unless the time for the making of such reconveyance to said Dickson should be extended by mutual consent, and that such reconveyance to Joseph M. Dickson was never made by Phœnix Land Company during his lifetime, nor has it been made to plaintiff Mrs. Exall. That plaintiffs are entitled to all revenues of said interest in said lands during the time defendants have unlawfully been in possession of same and the reasonable rental value of that portion of said lands from which they have been excluded by the cotenants, which they aver, as aforesaid, to have been reasonably worth $200 per month. That the said Spalding suit has long since been finally disposed of and more than 60 days have since elapsed. That same terminated in a judgment in favor of defendants therein, and that it thereupon became the duty of the defendants therein to reconvey said interest in said lands to plaintiff, Mary D. Exall, and she is now entitled to enforce such reconveyance by decree of this court.

Plaintiffs further alleged: That, during the year 1904, defendant W. J. Moroney, conspiring and intending to defraud Joseph M. Dickson and his clients, the other members of J. E. Downes and associates, and to wrest from them their several interests in said lands and place the same in the sole control of himself for his own selfish purposes, caused to be created the said Phœnix Land Company, a corporation in which he caused himself to be made president, which he dominated and controlled and in which he at all times held a substantial, if not a majority, stock interest, and which, through dummies, he was at all times in position to dominate, and did dominate to such an extent that Phœnix Land Company was and is his alter ego and for whose acts and wrongs he is in all things responsible. That the purpose of said Moroney in the formation of said corporation was to induce J. E. Downes and associates, including Joseph M. Dickson, to convey to said corporation at nominal prices their fractional interests in the lands acquired under the fee contracts mentioned,

to the end that the board of directors and officers of said Phœnix Land Company, dominated by defendant Moroney, might control, manage, and operate said lands for the benefit primarily of said Moroney.

The defendants answered by general and special demurrers; a general denial; plea of not guilty; the statute of limitation of two years to so much of plaintiffs' petition as seeks to recover rents, less value for use and occupancy of lands prior to September 20, 1908; plea of limitation of four years to so much of plaintiffs' petition as seeks to cancel or set aside the deed or deeds from the trustees to Phœnix Land Company and so much of plaintiffs' petition as seeks to cancel the deed from Dickson to Phœnix Land Company.

In reply to plaintiffs' claims for rent and partition, defendants plead that much the larger part of the premises in controversy, and much more than plaintiffs claim, has always been unoccupied and no improvements have been erected thereon and no rents or revenues have been collected therefrom, that defendant Phœnix Land Company, in person and through its tenants, has erected valuable improvements on the northern portion of the second tract of land described in plaintiffs' petition and has collected rents and revenues therefrom, but more than three-tenths in acreage and value has always been vacant, unimproved, and nonrevenue bearing, and that neither plaintiffs nor Joseph M. Dickson have ever contributed any money or other thing of value necessary to make any of the property revenue producing or have actually demanded the possession of any part of same; therefore, even if plaintiffs should be held cotenants, they are in equity not entitled to any benefit on account of the improvements erected by the defendant Phœnix Land Company and its tenants, or to any part of the rents and revenues collected from the other improved portions of said premises. Defendant further averred: That J. M. Dickson rendered no services in recovering the lands in controversy, had no confidence in the ultimate recovery thereof, and refused to bear any of the necessary expenses incident to the step taken and litigation involved in the recovery of said lands. In other words, that Dickson's conduct, as alleged in detail by defendants, amounted in legal effect to an abandonment or forfeiture of his interest in the contingent fees upon which his alleged rights are based, although such may not have been his intention; that in any event Dickson's interest, if any, was only an interest in a partnership that had never been settled, and that Dickson had received his full interest in the partnership assets. (This defense was excluded on demurrer.) That three other lawyers, R. Oakley, W. H. Clark, and T. B. Love, became jointly interested in said contingent fees, and that for this reason, as well as various others, Dickson's interest in said fees, if any, was much less than one-half. That neither Dickson nor any of the other lawyers ever had any paper title, executed or executory, and that they never had any interest in said land except under the doctrine of implied trusts, and that any such interest in the land itself was eliminated by the sale to the Phœnix Land Company; such interest, if any, thereupon attaching to the proceeds of the sale. That said alleged contract with the Phœnix Land Company was void because it did not undertake to convey anything except such equitable title to the land as Dickson may have then had, and he then had no title. That said contract was not executed with corporate authority. That it was without legal consideration. That, in view of the circumstances under which it was obtained by Dickson, such contract was contrary to public policy and void. And that Dickson was estopped by his subsequent conduct from claiming any benefit under such contract. Defendants by cross-action asked to be quieted in their title to all of said lands.

A jury trial resulted in a verdict and judgment in favor of the plaintiff Mrs. Exall for an undivided one-fourth interest in the lands in controversy and for plaintiffs against defendants in the sum of $917.80 on accounting, for rents, etc.; the judgment also providing . for a partition and appointing commissioners.

The first and second assignments of error assert that the court erred in refusing to direct a verdict in favor of defendants as requested by them, and as complained of in paragraphs 27 and 28, respectively, of their motion for a new trial. Numerous propositions are advanced under these assignments, which are to the effect: (1) That the evidence was insufficient to support a verdict for the plaintiffs. (2) That the interest of a former partner, or one who succeeds to that interest, in partnership assets, after the dissolution of the firm, is not an undivided interest as tenant in common in such assets, but is an undivided interest in what, if anything, may remain of the partnership assets, considered as a whole, after the discharge of all partnership obligations and adjustment of all equities between the partners, and there were no allegations or proof in this case that such obligations of the firm of Dickson & Moroney had been discharged or that the equities between them had been adjusted. (3) That where a firm of two lawyers have acquired merely inchoate rights under contingent fee contracts, and the firm is dissolved when only a relatively small part of the lawyers' services have been rendered, and the prospects for ultimate success unfavorable, and one member of such dissolved firm, who has never actually participated in the work, thereupon refuses to do any work, or answer any of the burdens of the business, and the other member of the dissolved firm thereupon proceeds with the performance of the contracts, and is ultimate-

ly successful, such refusal and conduct of the former partner amounts in law to an abandonment of his inchoate interest in such contracts, although there may have been no actual intention to abandon, etc.  (4) That when the full legal title has been expressly conveyed to trustees of an express and active trust, and such trustees are expressly given full powers of management, sale, conveyance, distribution, or partition of the trust estate, and the trustees are authorized to act in their own names alone as trustees, the beneficiaries, as such, have no actual title, legal or equitable, although they have an equitable interest, and that when such trustees, in the due exercise of the powers thus conferred, sell the trust estate, and the evidence shows such sale was fair and legal, the beneficiaries of the trust cease to have any interest in the property so sold, and their rights, whatever they may be, attach solely to the fund realized from the sale.  (5) That the courts will not enforce a contract made by a lawyer, when such contract stipulates for compensation or special advantages to the lawyer to which he would not be entitled under his original contract of employment, and no additional services by the lawyer are provided for or contemplated, because such a contract is void for want of consideration, and also because prohibited on grounds of public policy; besides, that when it appears that such a contract was obtained under threats by such lawyer that otherwise he would assume an attitude in hostility to the rights and interest of his clients, such contract is void also under general principles of equity, even though such lawyer was sincerely laboring under the mistaken belief that his conduct was legal.  (6) That the personal participation of J. M. Dickson, under whom plaintiffs claim, in the defense of the Spalding suit, and especially in successfully resisting the claims of D. A. Robinson, estopped him from subsequently claiming any relief inconsistent with the relief given Robinson.  (7) That as the prospectus of the Phœnix Land Company, and the reports that accompanied the same, provided for absolute equality among beneficiaries, giving each beneficiary the option to take either cash or stock, and most of the beneficiaries elected to take stock, the reservation of a secret advantage to Dickson by his contract with the Phœnix Land Company was illegal and void.  (8) That the alleged contract between Dickson and the Phœnix Land Company is void, because it does not undertake to convey any specific interest in said lands, but only such equitable interest, if any, as Dickson may have then actually had in said lands, and he then had no interest in the lands themselves, but his interest, if any, was in the proceeds of the sale, and said contract does not undertake to enlarge Dickson's alleged interest, and there is no pleading asking for the reformation of said alleged contract.  (9) That there was no legal consideration for the alleged contract between Dickson and the Phœnix Land Company, because the confirmation deed which Dickson agreed to make was unnecessary in law, conveyed nothing, and in any event it was his duty to make such deed if so requested; that Dickson's agreement not to antagonize his then or former clients was part of an illegal transaction.  (10) That the contract between Dickson and the Phœnix Land Company is void because it was executed by the president of said corporation without any authority conferred by its directors or stockholders.  (11) That the alleged contract between Dickson and the Phœnix Land Company cannot be sustained under the general authority exercised by Moroney as attorney for the beneficiaries, or as the holder of proxies from the stockholders, because such general authority did not authorize Moroney to make a contract to their prejudice giving special and secret advantages.  (12) The alleged contract between Dickson and the Phœnix Land Company was ultra vires.

[1, 2] A careful consideration of the evidence has led us to the conclusion that the court did not err in refusing the peremptory instruction.  It has been repeatedly held that, "to authorize the court to take the case from the jury, the evidence must be of such a character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it."  This rule was announced and the principle applied in the case of Aldridge v. Pardee, 24 Tex. Civ. App. 254, 60 S. W. 789.  In that case this court said: "When, upon a trial, the evidence adduced is such that, as a matter of law, a judgment could be rendered only one way, then the court is authorized to direct the jury to render a verdict accordingly.  But where there is evidence tending to support both sides of the controversy the issues must be submitted to the jury, and judgment rendered in accord with the verdict."  The record before this court contains evidence warranting the submission of the material issues made by the pleadings to the jury for their determination, and the court was not authorized to direct their verdict.  It appears that the law firm of Dickson & Moroney, composed of J. M. Dickson and W. J. Moroney, who were equal partners, was formed in 1885.  The partnership continued until December 1, 1899, when it was dissolved.  It was the general practice, with probably some exceptions, that the business which came to this firm of lawyers would receive the special attention of that member of the firm who first assumed charge of it.  On sundry dates, beginning as early as 1895, a number of the general creditors of the three successive organizations and reorganizations of the Texas Trunk Railroad Company, then insolvent, and in the hands of a receiver appointed by the federal court, employed the firm of Dickson & Moroney to collect their respective claims.  It was agreed that Dickson & Moroney should have for

their services in enforcing said claims certain proportions of whatever might be recovered for their clients, whether in money or property. The proportions, it seems, were different with the different clients; but the average of the contingent fees was one-half of whatever might be recovered. When said attorneys were employed it was intended to undertake to subject certain lands of the Texas Trunk Railroad Company to the payment of said claims, or to acquire said lands to be divided between said attorneys and said creditors in proportion to their respective interests; but the creditors did not then own or claim to own said lands or any interest in them. Some of the fee contracts were oral, and some were arranged by correspondence. This business fell into the hands of the defendant Moroney, and was given his special attention. He testified, as we understand, however, that he took the case just like he did other cases; that he took it to handle for the firm and had primary management of it. After the employment of Dickson & Moroney, it was agreed that the creditors represented by them would "pool their issues," and as a result thereof they were organized into an association called J. E. Downes and associates. The said J. E. Downes owned or controlled a judgment against the Texas Trunk Railroad Company for a large amount, and this judgment was used by Dickson & Moroney as the initial step for the enforcement of the claims of their clients. To this end execution was issued on said judgment in March, 1895, and levied on the tracts of land in controversy herein, and after proper notice, etc., said lands were sold under said execution to C. C. Bumpas on the first Tuesday of April, 1895; the sheriff's deed being made to him as trustee for J. E. Downes and associates, upon his bid for $2,350.

Dickson & Moroney then for their said clients, composing the association of J. E. Downes and associates, instituted suit in trespass to try title in the district court of Dallas county, Tex., in the name of C. C. Bumpas, to recover the same land from the Texas Trunk Railroad Company and from its surviving directors and trustees, John F. Ely, James B. Simpson, W. L. Cabell, and D. A. Robinson, and from John H. Gaston, as receiver of said railway company. In this suit judgment was rendered, declaring the Texas Trunk Railroad Company, as originally incorporated, dissolved, and that plaintiff, C. C. Bumpas, as trustee for J. E. Downes and associates, have and recover of the defendants the title and possession of the lands and premises sued for, which included the lands involved in the present suit. With the view of further strengthening the title thus acquired, Dickson & Moroney obtained a deed from the said John F. Ely, James B. Simpson, W. L. Cabell, and D. A. Robinson, as surviving directors and trustees of said rail-

way company, to C. C. Bumpas, trustee for J. E. Downes and associates, purporting to convey the same lands to him. Neither of the deeds to Bumpas stated the nature or terms of the trust or the names of the beneficiaries except by the collective designation, "J. E. Downes and associates." At this time these lands were held by an adverse claim of title by E. H. Pardee and Collis P. Huntington, nonresidents of this state; this claim of title resting upon a sale and purchase made under foreclosure of a mortgage executed by the Texas Trunk Railroad Company. This claim of title by Pardee and Huntington being regarded as a cloud upon the title acquired by J. E. Downes and associates, as above stated, it was determined to institute suit to remove it, and to render the suit, it seems, nonremovable to the federal court, and perhaps for other reasons, Dickson & Moroney caused C. C. Bumpas, as trustee for J. E. Downes and associates, to execute a deed conveying the said lands to A. D. Aldridge and A. F. Hardie, residents of Texas, and W. G. Mowry, a resident of the state of New York, as trustees for J. E. Downes and associates; said deed containing the stipulation recited in plaintiffs' petition and set out in the former part of this opinion. Upon the execution of this deed Dickson & Moroney instituted suit in trespass to try title in the district court of Dallas county, Tex., in the name of said Aldridge, Hardie, and Mowry, as trustees for J. E. Downes and associates, against H. Pardee and Collis P. Huntington, to recover said lands. The defendants in this suit removed the case to the federal court, but upon motion of plaintiffs it was remanded to the state court; R. Oakley, an attorney of New York City, having been employed by Dickson & Moroney to secure testimony and assist in getting the case remanded. After the case was remanded to the state court, a trial thereof on July 25, 1899, in the district court of Dallas county, resulted in a judgment for plaintiffs for the first and third tracts of land described in the petition, which were of little value, and in favor of the defendants for the two tracts involved in this suit. Both plaintiffs and defendants appealed the case to the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas, where judgment was rendered affirming the judgment of the district court as to the lands recovered in the district court by defendants. Writ of error having been denied by the Supreme Court of Texas, Pardee and Huntington sued out a writ of error from the Supreme Court of the United States, which court, on March 16, 1903, affirmed the judgment of the Court of Civil Appeals.

Pending the suit of Aldridge v. Pardee, above referred to, W. J. Moroney employed W. H. Clark and T. B. Love, attorneys at law, to assist in the prosecution thereof, who, after the respective dates of their employ-

ment, participated actively as associate counsel, in attending to said suit and the business arising in connection with it. Mr. Clark was employed before the firm of Dickson & Moroney was dissolved, and Mr. Love after it was dissolved. When Oakley, Clark, and Love were employed, there was no definite arrangement as to what either should receive or what proportion of the fee of Dickson & Moroney they were to get. "The terms were indefinite"; but Mr. Moroney stated that they were employed as associate counsel, "with the understanding that they would participate in the fee, all stand on the same bottom, as I understood." When W. J. Moroney learned that the judgment of the Court of Civil Appeals had been affirmed by the United States Supreme Court, he wrote and issued circular letters to the members of J. E. Downes and associates requesting them to attend a meeting at his office in the Gaston Building, Dallas, at 3 p. m., November 24, 1903, for the purpose of considering and determining upon the proper course to pursue to wind up all the matters arising out of Texas Trunk Railroad land litigation, and he stated: "The parties interested in this matter are collectively known as J. E. Downes and associates. The legal title to the lands is vested in A. D. Aldridge and A. F. Hardie, as trustees. The general situation is about as follows: The various creditors represented are interested in proportion to the amount of their respective claims, less the amounts respectively agreed upon to be paid as attorney's fees; an agreement to that effect having been made with each creditor." In this circular letter various means of realizing upon the lands recovered by the members of J. E. Downes and associates were suggested, viz., sell the property and divide the proceeds, or divide the property itself among the interested parties, or to convey the property to a corporation to be organized, and capitalized at the estimated fair value of the property and divide the stock in proportion to the various claims, etc., and he expressed his preference for the latter course.

The meeting called in these letters was held at the time and place appointed. There were present at this meeting J. M. Dickson, W. J. Moroney, T. B. Love, and a few of the local creditors, members of J. E. Downes and associates. Mr. T. B. Love testified: "No minutes were kept. There wasn't a great many there, weren't a great many to be there; six or seven or eight; and we just sat around and talked about the matter. The result of that conference was the adoption of a motion appointing a committee composed of Moroney, Aldridge, and Hardie, to decide upon and carry out a plan of handling the property belonging to those represented." This committee made no formal report, but at a conference between Mr. Clark, Mr. Moroney, and Mr. Love, no one else being present, the course agreed to be pursued by the committee was discussed. "The organization of the Phœnix Land Company, one of the defendants in this suit, and the conveyance to it by the trustees of J. E. Downes and associates, was the sequence of the meeting of November 24, 1903, and the appointment of the committee mentioned thereat. The organization of the Phœnix Land Company was announced in what purported to be a prospectus of said company, dated January 9, 1904, addressed to J. E. Downes and associates and signed, 'A. F. Hardie, A. D. Aldridge, W. J. Moroney, Committee.'" The capital stock of the Phœnix Land Company was $20,000, divided into 2,000 shares of $10 each. Its incorporators are H. B. Fisher, R. A. Wiley, and Lee Richardson. It was issued upon affidavit of W. J. Moroney that more than 50 per cent. of the capital stock had been in good faith subscribed and that more than 10 per cent. had been in good faith paid in. The lands involved in the Aldridge-Pardee litigation and recovered by the trustees for J. E. Downes and associates had been appraised by three real estate men of Dallas at the value of about $20,000. In order to pay one-tenth of the capital stock of Phœnix Land Company, W. J. Moroney executed a deed to the company conveying a one-tenth interest in said lands in consideration of $2,000 in stock. W. G. Mowry, one of the original trustees, having died, deeds were then obtained from A. D. Aldridge and A. F. Hardie, as surviving trustees for J. E. Downes and associates, and also from all of the members of the association of J. E. Downes and associates, conveying their respective interests to Phœnix Land Company, except D. A. Robinson and J. M. Dickson, who refused either to take stock in the Phœnix Land Company or to convey his interest in the lands to it for cash.

About the time of the organization of the Phœnix Land Company, one H. M. Spalding claimed to be a creditor of the Texas Trunk Railroad Company and a member of J. E. Downes and associates, and therefore entitled to an interest in the land recovered by the trustees for that association. His interest was not recognized, and he brought suit in the district court of Dallas county, Tex., against Phœnix Land Company, Aldridge, and Hardie as surviving trustees, and all members of J. E. Downes and associates, including W. J. Moroney and J. M. Dickson, to recover an interest in the lands involved in this suit. D. A. Robinson, who was a member of J. E. Downes and associates, was also made defendant in Spalding's suit. Robinson, however, declined to defend against Spalding's suit, but employed Spalding's lawyer to represent him and joined with Spalding in his suit and sought to recover an interest in the lands as a creditor of the Trunk Railway Company and as a member of J. E. Downes and associates. J. M. Dickson filed an answer in this suit for

himself, **W. J.** Moroney representing the other defendants, and thereafter called upon Mr. Moroney and, according to Moroney's testimony, said in substance, among other things, that he (Dickson) up to that time had represented himself in the Spalding suit and had not determined what course he should take in the matter; that he did not think it was any of Moroney's business to represent those people under Dickson's & Moroney's original employment; that Dickson said he would have to take a position in the matter and he would have to be there either with the plaintiffs or the defendants in that lawsuit, and that he disliked very much to be placed in the attitude of antagonizing his former clients and antagonizing Moroney, but unless some arrangements were made satisfactory to him that he would have to take his position (in the suit); that "he would rather be on my side of it, but that he would not be on my side unless he could make a satisfactory arrangement, and he thought I was wrong about my position about these lawyers, and he thought I was wrong about the Ely and Cabell claims, but he would waive the fight on the claims if he could make some arrangement that was satisfactory to him, if I did not do that he would file an answer adopting substantially the allegations of Spalding." Mr. Moroney further testified: That he expressed the opinion that he thought it was his duty to represent certain of the defendants in the Spalding suit and said to Dickson: "What do you think is reasonable? I will do anything in reason in this matter." That Dickson then made the suggestion that he wanted to get his interest in land. As a result of this interview, J. M. Dickson executed with the Phœnix Land Company, said company acting by and through W. J. Moroney as its president, a contract in writing of date April 15, 1905, by which he agreed to convey to the said Phœnix Land Company all his right, title, and interest, legal or equitable, in the lands acquired by Aldridge, Hardie, and Mowry, as trustees for J. E. Downes and associates, in order "to put the record title of said lands in said company, the more readily to perfect the title to said property, and to free the same from litigation." Contemporaneously with the execution of said contract, J. M. Dickson executed his deed to the Phœnix Land Company, purporting to convey to it his entire interest in said lands as in said contract he had agreed to do.

The said contract by which Dickson agreed to convey his interest in said lands to the Phœnix Land Company was signed by said company by W. J. Moroney, its president, and expressly acknowledged "that the real interest of said Dickson in said property shall not be affected by said conveyance," and recited that, "as soon as the same can conveniently be done, the Phœnix Land Company will convey to the said Joseph M. Dickson his interest in said lands, and in the proceeds of such parts as may have been sold," and that said company "will not sell any of its property situated within five miles of the county courthouse of Dallas county, Tex., without the written consent of said Dickson," and that Dickson should be entitled to the reconveyance of his interest in said lands 60 days after the termination of the said Spalding suit, unless the time for the making of such reconveyance should be extended by mutual consent. This reconveyance to Joseph M. Dickson was never made by the Phœnix Land Company during his lifetime, nor has it been made to plaintiff Mrs. Exall. After the execution of the contract between Dickson and the Phœnix Land Company and the deed from Dickson to said company as stated, Dickson joined in the defense of the Spalding suit and assisted in conducting the trial thereof. He did not, according to the testimony of W. J. Moroney, assist in the prosecution of the suit of Aldridge v. Pardee, and refused to contribute anything therefor, and Moroney advanced considerable sums of money of his own to defray the expenses of said suit. The trial of the Spalding Case resulted in a judgment, April 16, 1906, for Phœnix Land Company for the lands in controversy, and adjudging that D. A. Robinson was interested in the trust estate and that his distributive share of the proceeds of the sale of the trust estate of Phœnix Land Company is $700. This judgment was affirmed on appeal to the Court of Civil Appeals. 50 Tex. Civ. App. 230, 110 S. W. 560. Joseph M. Dickson died in September, 1909, and left a will which was on November 1, 1909, admitted to probate by the county court of Dallas county, Tex. The plaintiff Mrs. Exall, Dickson's sister, is made sole residuary legatee and independent executrix of Dickson's estate.

[3, 4] Upon the foregoing and other facts as shown by the evidence, the specific reasons urged in support of appellants' contention, that a verdict in their favor should have been directed by the court, are not sound. The rights of J. M. Dickson, under whom appellees claim, were not limited to an interest in the proceeds of the sale of the lands recovered. By the terms of the fee contracts he became the equitable owner of an undivided one-fourth interest in said lands. It is well settled that an agreement between two or more persons for the joint acquisition of land is not, within the meaning of our statute of frauds, a contract for the sale of land which, to be valid, must be in writing. Gardner v. Randell, 70 Tex. 453, 8 S. W. 781. Such, in effect, was the verbal fee contracts entered into between the creditors of the Texas Trunk Railroad Company and Dickson & Moroney, under which Dickson & Moroney undertook to enforce and collect their claims in consideration of a part of the recovery whether in money or in land,

and it was not essential to the validity of said contracts and their enforcement that they be in writing. The subsequent organization of the creditors into an association under the name of J. E. Downes and associates, under which collective designation their claims were prosecuted, does not affect the question. When, pursuant to the contracts previously entered into, the lands in controversy were acquired in the name of trustees for J. E. Downes and associates, said trustees took the legal title thereto; but the beneficial or equitable title became vested in the members of said association in the proportion of their respective claims and in J. M. Dickson and W. J. Moroney in the proportion of their interest under the terms of the contracts. In the suit of Aldridge against Pardee, referred to in a former part of this opinion, it was determined and definitely settled that Aldridge, Hardie, and Mowry, as trustees holding the legal title of the lands in controversy, could maintain an action of trespass to try title to recover said lands; but the rights of the beneficiaries in that trust as among themselves, or whether or not the beneficiaries had an interest in the lands or only "an interest in the proceeds of the administration of the trust," were not determined. That the defendant Moroney, at the termination of the Aldridge-Pardee suit, recognized in each member of J. E. Downes and associates an interest in the lands involved in that suit is shown, among other ways, in a letter written by him in November, 1903, in reference thereto. In this letter he said: "These claims were all merged into an interest in the land, about January 1, 1898, although our title to the land was not finally established until the present year." Nor do we think it was adjudged in the case of Spalding v. Phœnix Land Company et al., also referred to in a former part of this opinion, that said beneficiaries had no interest in said lands. The statement of facts shows that certain parts of the proceedings had and record made in the case of Spalding v. Phœnix Land Company et al. were introduced in evidence in this case, among which were the assignments of error filed and urged on the appeal of that case to the Court of Civil Appeals; but neither of said assignments questioned the correctness of the district court's action in giving D. A. Robinson, one of the beneficiaries in the trust in question, and who allied himself with Spalding, a judgment for a part of the proceeds of the sale of the lands instead of a part of the lands. It is also manifest from the opinion of the Court of Civil Appeals affirming the judgment of the district court that no such question was considered and decided by that court. It was simply held that Spalding was not a creditor of the Texas Trunk Railroad and was not entitled to recover anything, and the only reference to Robinson or his claim in the court's opin-

ion appears in connection with its discussion of the admissibility of certain testimony, and is as follows: "As to Robinson and Nowlin, who claimed under him, it is manifest that the evidence referred to did not influence the court, because their claim was allowed, and there is no assignment of error complaining of the amount awarded to them." Spalding et al. v. Phœnix Land Company et al., 50 Tex. Civ. App. 230, 110 S. W. 560.

[5] The evidence did not conclusively show that J. M. Dickson had lost his interest in the fee contracts with J. E. Downes and associates or the lands acquired thereunder by an abandonment of said contracts and the litigation in relation to said lands following their acquisition. Indeed, it may be questioned whether the evidence raised a doubtful issue in this regard. Surely it cannot be said the evidence was so one way in respect to the question that the court would have been authorized to take it from the jury.

[6] Nor do we think J. M. Dickson's interest in the lands should have been charged with any part of W. J. Moroney's claim for extra compensation for personal attention and services rendered in what is known as the "Texas Trunk Case," before and after the dissolution of the partnership of Dickson & Moroney. This case, and the matter in connection therewith, was partnership business of Dickson & Moroney, and the facts and circumstances in evidence are amply sufficient to justify the conclusion that in the usual and customary division of the firm business it fell into Moroney's hands; that, while Moroney was engaged to look after the Texas Trunk Case, J. M. Dickson was employed in looking after other cases or business of the firm. Besides, we are inclined to agree with the view expressed by counsel for appellees that where partnerships are equal and there is no stipulation, as in the instant case, in the partnership agreement for compensation to a surviving partner for settling up the partnership business, nor agreement between the partners upon voluntary dissolution of the partnership, providing for extra compensation to the partner who remains in charge of a particular item of firm business, the latter is entitled to no extra compensation for such services. It is undisputed that J. M. Dickson and W. J. Moroney were equal partners, and no such agreement as we have referred to appears to have been made. After the dissolution of the partnership, W. J. Moroney remained in charge of the claims against the Texas Trunk Railroad Company and the litigation brought about by the Aldridge-Pardee suit, while Dickson retained or took charge of other items of firm business. That Dickson was so engaged is at least fairly inferable from the circumstances in evidence. The question of Dickson's abandonment of the fee contracts with J. E. Downes and associates and his consequent loss thereby of any interest in the lands re-

covered in the efforts to enforce the collection of the creditors' claims under said contracts were fairly submitted to the jury, and they, upon evidence sufficient to sustain their findings, resolved it against appellants.

[7] The conveyance of the lands by the trustees to the Phœnix Land Company, under the circumstances shown, did not have the effect to divest J. M. Dickson's interest therein out of him and vest it in said company. These trustees held the lands in trust for the members of J. E. Downes and associates and for Dickson & Moroney in the proportion of their respective claims and interest, and they were not empowered by the nature or the terms of the trust assumed by them to make a valid and binding conveyance of the beneficial or equitable interest of either of said parties, as seems to have been attempted to be done by the deed to the Phœnix Land Company. Dickson emphatically refused to accept cash or shares of stock in the Phœnix Land Company for his interest in the lands, and so refused to execute the deed made by him, purporting to convey his interest in said lands to said company, except upon the execution and delivery, contemporaneously therewith, to him by the company of the contract dated April 15, 1905, by which, as heretofore shown, his interest was to be reconveyed. Obviously, W. J. Moroney and the Phœnix Land Company did not regard the conveyance of the trustees sufficient to vest in said company Dickson's interest in the lands. At all events, the company by the terms of the contract agreed, in consideration of the benefits to be derived therefrom, to reconvey Dickson's interest, if he would execute the deed.

[8] This contract was not illegal and void. The confidential relationship of attorney and client never existed between Dickson and the Phœnix Land Company, and the agreement in the contract to reconvey to Dickson his interest in the lands was not a stipulation in effect giving him a special advantage over the creditors of the Texas Trunk Railroad Company represented by him, nor was it a stipulation for compensation to which he was not entitled under the original contract of employment. The clients of Dickson & Moroney could in no way, so far as we are able to see, be injuriously affected by said contract. Dickson never represented the Phœnix Land Company as attorney. He declined to become a stockholder in it or to recognize the conveyance of the lands which the trustees of J. E. Downes and associates made to it as in any wise affecting his title to his interest in the lands, and so notified said company's president and chief executive officer, Mr. Moroney. The principle enunciated in the authorities cited by appellants, to the effect that an agreement entered into by a client with his attorney, after the latter had been employed, in respect to the particular business, by which the original contract is so varied as to secure greater compensa-

tion to the attorney than was first agreed upon will not ordinarily be enforced, has no application to the conduct of Dickson in securing the contract providing for a reconveyance to him of his interest in the lands in controversy.

[9,10] The contract was supported by a sufficient consideration, and its enforcement cannot be defeated on the ground that its execution was obtained by the threats of Dickson that he would assume in the suit of Spalding and others against the Phœnix Land Company et al. an attitude of hostility to the rights and interest of his former clients, members of J. E. Downes and associates. We do not understand that mere threats of a civil action and of ordinary proceedings against property constitute duress. The utmost that can be said of Mr. Moroney's testimony in respect to this phase of the case is that, unless his interest in the lands involved in the Spalding suit was recognized, he (Dickson) would join with Spalding in his contentions against the Phœnix Land Company and other defendants in that suit. Landa v. Obert, 45 Tex. 539. At this time there was no legal duty resting upon Dickson to defend that suit.

[11] Nor did Dickson's participation in the defense of the Spalding suit after the execution of said contract estop him, and those claiming under him, from subsequently asserting his interest in the lands. As contended by counsel for appellees, a contract made by parties to a pending suit and in contemplation of the very judgment which was afterwards obtained in the suit—and where the very consideration of the contract was the prospect and probability of procuring such a judgment by reason of the making of the contract—cannot operate as an estoppel to either party to such contract. Such a contract is in no sense inconsistent with the judgment and could not have been interposed as a defense to the obtaining of the judgment. The Spalding suit was pending when the contract under consideration was made, and it was contemplated that the very judgment rendered therein would be rendered. Just how the conduct of any party to the Spalding suit could have been influenced to his injury by a knowledge or want of knowledge of the contract between Dickson and the Phœnix Land Company we are unable to comprehend, and it is settled law that, "to constitute an equitable estoppel, the act or admission must be shown to have had a direct or immediate influence upon the conduct of the party claiming its benefit. No such estoppel can arise without proof of wrong on one side, and injury suffered or apprehended on the other, nor unless the injury be so clearly connected with the wrong that it might and ought to have been foreseen by the guilty party—when no injury results from a misrepresentation, its decision belongs to the forum of morals, and not to the judicial tribunals." Scoby v. Sweatt,

28 Tex. 713. See, also, Masterson v. Little, 75 Tex. 682, 13 S. W. 154; Lewis et al. v. Brown, 39 Tex. Civ. App. 139, 87 S. W. 704. There is nothing in the present case to show that the Phœnix Land Company, W. J. Moroney, or any other party to the Spalding suit was in any wise misled or suffered any injury by reason of the contract in question.

[12] The contract was not void because executed by W. J. Moroney, the president of the Phœnix Land Company, without authority having been formally conferred upon him by the company's board of directors or stockholders. It does not appear that the stockholders ever held a meeting, and it is conclusively shown that there has been no directors' meeting since 1907. The evidence justifies the further conclusions that Moroney owned, if not practically all of its stocks, a controlling interest in the company; that he received its moneys, amounting to many thousands of dollars, which he placed to his own personal account and uses; that he absolutely dominated, managed, and controlled its property and affairs as his own, and used the corporation as a medium of operation for his own benefit. In such case his acts were the acts of the corporation, notice to him was notice to the corporation, and any contract executed by him in the name of the corporation as its president was binding on the corporation. It appears from extracts of Moroney's testimony given in the trial of the Spalding suit, which were offered by defendants herein, that he held proxies from every stockholder in the Phœnix Land Company and represented each and every one of them.

[13] The contract is not void because ultra vires. In Waterman on Specific Performance, § 226, it is said: "It is now settled that a corporation cannot avail itself of the defense of ultra vires when the contract has been in good faith fully performed by the other party and the corporation has had the full benefit of the performance of the contract." And in Railway Company v. McCarthy, 96 U. S. 258, 24 L. Ed. 693, the court holds that the doctrine of ultra vires, "when invoked for or against a corporation, should not be allowed to prevail when it would defeat the ends of justice or work a legal wrong." Railway Co. v. Robards, 60 Tex. 545, 48 Am. Rep. 268; Railway Co. v. Gentry, 69 Tex. 625, 8 S. W. 98; Bank of Greenville v. Greenville Oil & Cotton Co., 24 Tex. Civ. App. 645, 60 S. W. 828. The Phœnix Land Company received the full benefit of the performance of the contract entered into between it and Dickson, and it seems clear that the ends of justice would be defeated, and a legal wrong done, to permit the Phœnix Land Company to defeat the enforcement of the contract on its part by its plea of ultra vires. Moroney testified: "I thought that the contract accomplished the main purpose I was after."

[14] If it be conceded that the interest of a former partner, or one who succeeds to that interest in partnership assets after the dissolution of the firm, is simply an undivided interest in what, if anything, may remain of such assets after the discharge of all partnership obligations, etc., as contended by appellants in their second proposition above stated, still the court did not err in overruling their demurrer to appellee's petition, excepting thereto, because it was not alleged that all the partnership obligations of Dickson & Moroney had been discharged, nor that the equities between them had been adjusted. Plaintiffs' petition, without such allegations, was sufficient to show a cause of action and right of recovery, and, if facts existed in relation to partnership obligations or an adjustment of equities between Dickson and Moroney that would show Dickson's interest in the lands under the fee contracts with J. E. Downes and associates to be less than claimed, they constituted matters of defense to be pleaded by defendants. However, it occurs to us that, in the absence of pleading and proof to the contrary, the evidence of and in relation to the execution of the deed by Dickson to the Phœnix Land Company for his interest in the lands, and of the contemporaneous agreement of said company to reconvey said interest to Dickson upon the termination of the Spalding suit, shows an adjustment of that particular item of their partnership business, by or in which it was understood and agreed that without reference to the status of their partnership affairs, and in all events Dickson was to have and hold his interest in said lands.

Appellants, by the twentieth assignment of error, assert that the court erred in submitting the issue of recovery and accounting for rents to the jury, because there is no evidence that defendants occupied or collected rents from more than the Phœnix Land Company's proportion of the lands, and there is no evidence that defendants, or either of them, excluded Dickson or plaintiffs from joint possession, or agreed to account for rents, or otherwise made themselves liable therefor, and there was no pleading authorizing an accounting for rents from one cotenant against another. This assignment will be overruled. We think the law upon the subject is substantially as contended by appellees.

[15] In order to entitle an ousted cotenant to an accounting for rents, it is not necessary that he should have been ousted from the entire property. Such cotenant is entitled to the use and occupancy of the entire estate in common with the other tenants, irrespective of the proportion of his interest, and, this being true, his cotenant who has ousted him from any part of the property must account for his interest in rents collected by him. 17 Am. & Eng. Enc. of Law, p. 694.

[16, 17] The general rule is well established that one tenant in common, who uses and cultivates land, cannot be made to account to his cotenant until there has been a formal demand

by the latter to be admitted to the possession in common and such possession has been denied. But where a tenant in common has nothing to do but to receive the rents, a different rule prevails, and he is liable to account to his cotenants for their proportion of the rents so received. Thompson v. Jones, 77 Tex. 626, 14 S. W. 222. The record shows that neither of the defendants actually used or occupied the lands in question. But they rented out parts of the "Hughes & Slaughter Tract," to different tenants, and received about, or perhaps more than, $14,000 in rents therefor. The defendants specially pleaded the statute of limitations against the claim of the plaintiffs for rents, and the court instructed that plaintiffs' right, if any, to recover rents collected by defendants before September 1, 1908, was barred by limitation, but that they could consider said rents and the proceeds of sale of land received by defendants prior to that date as an offset to any claims urged by the defendants for expenditures chargeable against plaintiffs' interest in the lands. The defendants are strenuously contesting the plaintiffs' claim and denying that J. M. Dickson had any interest whatever in the lands or title thereto, and that hence plaintiffs have no interest therein or title thereto. They assert in this suit title in themselves to all the lands acquired under the fee contracts with J. E. Downes and associates that are involved herein, and pray that their title be quieted. In 17 Am. & Eng. Enc. of Law, p. 693, it is said: "It is well settled by all the authorities that, when one tenant leases the common property to a third person and receives the rents, he is liable to account to his cotenant for their proportionate share." Akin v. Jefferson, 65 Tex. 737; Holmes v. Best, 58 Vt. 547, 5 Atl. 385. The pleadings and evidence authorized the submission of the issue, and the form in which it was submitted, is at least substantially correct.

[18, 19] The court charged the jury, in effect, that, if plaintiffs were entitled to recover an interest in the lands involved in the suit, they should be charged with one-half of any interest to which the attorneys Oakley, Clark, and Love may have been entitled under their respective contracts of employment for services rendered by them in the suit of Aldridge et al. v. Pardee et al., and one-half of all expenditures of litigation and traveling expenses in the suit to establish and maintain the title to said lands. The appellants object to this charge and question its correctness mainly upon the ground that it treats Oakley, Clark, and Love, not as associate counsel with rights of the same character as the rights of the other attorneys, but as mere employés of 'Dickson & Moroney, when neither the pleadings nor evidence warranted any such charge. In other words, the principal contention, as we understand it, is that Oakley, Clark, and Love became, under the terms of their employment, the equitable owners of an undivided interest in the lands acquired under the fee contracts between Dickson & Moroney and the creditors of the Texas Trunk Railroad Company, which had been purchased by Moroney, and the charge was erroneous because such interest was not herein recognized, but declared, under the evidence, to be such sum as Moroney had agreed to pay them or such as their services were reasonably worth. We are of the opinion that the trial court's view of the matter as indicated by his charge is correct, or at least as favorable to appellants as they were entitled to under the law and facts. There is no pretense that in the employment of these lawyers a written contract was entered into by which they were to share with Dickson & Moroney an interest in the lands acquired under said original fee contracts, and it is undisputed that they were employed to assist in the prosecution of the Aldridge-Pardee suit after the lands in question had been conveyed to C. C. Bumpas, as trustee for J. E. Downes and associates, and after the legal title to said lands had been acquired by Aldridge, Hardie, and Mowry as substituted trustees for J. E. Downes and associates. Any parol contract, therefore, that W. J. Moroney may have made with Oakley, Clark, and Love, by which he agreed for himself and for the firm of Dickson & Moroney that there should be conveyed to them, or that they should have, an interest in said lands for their services to be rendered in said suit, was in violation of the statute of frauds and nonenforceable.

In Sprague v. Haines, 68 Tex. 215, 4 S. W. 371, it is said: "The words 'any contract for the sale of real estate,' as used in the statute, include every agreement by which one promises to alienate an existing interest in land upon a consideration either good or valuable.' It is accordingly held, in a number of cases, that a contract to convey land in consideration of labor or services to be rendered, is within the statute." In Browne on Statute of Frauds, § 263, the law is thus stated: "The effect of the provision, as expounded by the courts, is to render unavailing to the parties as the ground of a claim any (parol) contract in whatever shape it may be put, by which either of them is to part with real estate." This statement of the rule is quoted with approval in Sprague v. Haines, supra. The distinction in the contract between Dickson & Moroney and the creditors of the Texas Trunk Railroad Company, and the contract between Dickson & Moroney and Oakley, Clark, and Love, is made very clear by the opinion in the Sprague-Haines Case, cited. The former were contracts for a joint enterprise to obtain title to land which neither of the parties then owned; whereas, in the latter the contract was to convey to Oakley, Clark, and Love, according to the contention of the ap-

pellants, an interest in lands, the equitable title of which was then in J. E. Downes and associates, and Dickson & Moroney. It follows that Moroney acquired no greater interest in the lands in controversy by any transfers he may have taken from either Oakley, Clark, or Love than he had under the original fee contracts with the creditors of the Texas Trunk Railroad Company.

There are a number of assignments complaining respectively of the court's charge, special charges refused, and other rulings, which we deem it unnecessary to discuss in detail. Some of the questions presented by them have been disposed of adversely to appellants by what we have already said, and further discussion of them would be superfluous. Careful consideration has been given each and every assignment of error, with the conclusion reached that none of them discloses any such error as requires a reversal of the case.

The verdict of the jury is sustained by the evidence, and the judgment is affirmed.